May it please the Court, James Speyer for Defendant and Appellant, Epoch Everlasting Play, LLC. Your Honors, this case concerns a line of toys known as calico critters. Let me just say I'd like to reserve four minutes for rebuttal. Calico critters are animal figures that are flocked and are sold with small accessories. The warning on each calico critter's box states, warning, choking hazard, small parts, not for children under three years. The plaintiff contends that calico critters violates the CPSC's small parts rule and are accordingly banned hazardous substances that are illegal to sell because they pose a choking danger to children under three. On defendant's motion to dismiss, the district court agreed with that and held that calico critters are in fact banned hazardous substances because they contain small parts. Our argument on appeal does not challenge that ruling. But it is important to note that the CPSC, which is responsible for drafting that rule and enforcing that rule and has been for decades, has known about calico critters for decades and has expressly allowed them to be sold. It's also important to note that calico critters are legal to buy and to possess. Now, the plaintiff bought calico critters for her granddaughter, who was four years old at the time of purchase. The plaintiff considers calico critters, in her own words, a, quote, great toy. Her granddaughter played with those calico critters regularly for years. So there is no dispute in this case that the plaintiff bought a great product that was legal to buy, performed exactly as expected, caused no harm to the plaintiff or her granddaughter, is not considered dangerous for kids over three, and gave her granddaughter years of pleasure. Nevertheless, the plaintiff claims that she is entitled to, along with an entire class, the maximum amount of restitution available under the UCL, a full refund of the purchase price. And she also seeks a class-wide injunction banning the sale of calico critters with small parts, despite the fact that she has never stated that she intends to buy the product again. The district court certifies. Counsel, I mean, I'm trying to make sense of that testimony. It comes from her deposition, and she qualifies it by saying, no, I don't want to buy, not at this time. She doesn't categorically say no. Correct. What do I do with that? I think as a matter of logic, saying, I have no desire to buy a product at this time, does not allow you to infer anything about a future intent. It just simply, I don't have any intent to buy it at this time. As to future times, I may not have even thought about it. I may want to buy the product again. I may not want to buy the product again. It's pure speculation at this point to say that from saying, I have no intent to buy the product at this time, means that you can infer an intent to buy a product at a later time. And it's important to understand that allegations of possible future injury are not sufficient under the law, and the plaintiff has cited no case that finds standing in this context where there is not an affirmative statement of an intention to buy the product. Also, to your point, Judge Forrest, the Supreme Court, in the Lujan case, held that quote, unquote, someday intentions without any description of concrete plans or indeed any specification of when that someday will be, are not sufficient to establish standing for injunctive relief. And here, there is no record of even a someday intention, much less concrete plans as required in the Lujan case. So the district court certified the class, found that the plaintiff's full refund method was a valid methodology for calculating class-wide damages, and found that the plaintiff had standing to seek injunctive relief and was accordingly an adequate class representative. I want to ask a remedy question. If we agreed that there was no standing for the injunctive relief, that doesn't resolve the damages claim. What do we do in terms of this is up on, this started in state court, right? Yes. So if we don't have, if she doesn't have standing for the injunctive relief claim, that means we don't have jurisdiction over it. What do we do with it? Well, if she lacks standing for injunctive relief, it is not disputed in this case that she is an inadequate class representative for any purpose. Okay? Wait a minute. For any purpose? You mean for all claims? For any, she cannot represent a damages-only class. Why? If she lacks standing for injunctive relief. That's because her inability to seek injunctive relief means that the only way class members could obtain injunctive relief is by filing a separate action.  Couldn't this case, I mean, my recollection from the complaint is that we have a damages-only class, so couldn't this case proceed as a damages-only class action? What the judge did was certify a class under 23B3 and with the plaintiff claiming the right to seek both injunctive relief and damages. Right, but we can send it back for the district court to determine what's left after that. Well, what our position is, If we decide that she has no standing for the injunctive relief claim, can we send it back for the district court to then determine whether there can be certification for a damages-only class? If she, Your Honor, I think the question is clearly before this court right now. She does not dispute that if she lacks standing for injunctive relief, she cannot be an adequate class representative for any purpose. Where in the record is she making that concession? Well, because we said it in our opening brief, she did not dispute it in her answering brief. It's an undisputed proposition that we put out in our opening brief. Right, well, it's the procedural posture, right, because she's now seeking injunctive and restitution, and if one leg of that stool is knocked off, whether there's anything left, I think that's usually the district court's determination. I mean, you may be right that what they might want is a certification for a class that has both injunctive and damages, but I don't know that that's a foregone conclusion, but let's see what plaintiff's counsel says about that. I think it is a foregone conclusion. I think they want both injunctive relief and damages, but as a matter of law. At this stage, given the procedural posture that we are at at this stage, you're right about that. Yes. As a matter of law, if she lacks standing for injunctive relief, she cannot be a class representative for a damages-only class because that would amount to claim splitting and would jeopardize the claims of class members seeking injunctive relief. Is that a Rule 23 problem? I don't think that's a sort of typical court procedure problem. It's a race judicata problem, Your Honor. So the only way that class members can seek injunctive relief if she lacks standing for injunctive relief is to file a statement. What if the district court chooses to permit amendment of the complaint? There's all kinds of procedural vehicles to narrow the lawsuit, and so I think normally we let the district court figure that out. Your Honor, then I would move on to the point that no full refund is available in this case, and I'm happy to do that now or happy to talk more about injunctive relief standing. All right. Why don't you spend a few minutes? I know you wanted to save time as well talking about why a full restitution model is not appropriate. So my question for you is that if a product is, let's say, illegal to be sold, in that instance we would then have a full restitution model, right? No, Your Honor. Why not? Because the basic fundamental rule of restitution under the UCL is that you cannot obtain a full refund where the plaintiff has benefited from the product. And in this case, it is undisputed that the plaintiff has benefited from the product. The fact that this product is, according to the district court, illegal to sell, does not alter that analysis because the rules of restitution do not change depending on what the underlying conduct is. The rules of restitution are very clear. If you receive a benefit from a product, you're not entitled to a full refund.  I think the question is whether that illegality renders the product valueless. And what I would say to that, Your Honor, is clearly illegal products have value. A product has value if an individual is willing to pay for that product. Cocaine has value to some people. Prostitution has value to some people. A ruling that illegal products just have no value as a matter of law would simply ignore the undisputed factor. Economically, you're obviously right. I guess the question is, what does the case law say as far as because it would have to be sort of this legal fiction that illegal products don't have value. And I think that, so what is, why is that not supported, the idea that just as a matter of law, we're going to declare them to have no value even though they obviously do economically? Because I think the law is clear, and the Supreme Court has said it on several occasions, that courts cannot make assumptions like that when they are clearly at odds with the facts. And in this case, they are clearly at odds. And what's your best case for the idea that something that's illegal still has value for purposes of restitution? We cited two cases, Your Honor. We cited the Shahinian case involving illegal medical gowns where the court said that, yes, the claim is that these medical gowns are illegal, but the plaintiff has not made any showing that these gowns are valueless to them. So, therefore, you are not entitled to a full refund. And we cited the Ang v. Bimbo case, which says the same thing in the context of food products that are illegal to sell. Now, it's also a concern that the plaintiff says that allowing a full refund here would somehow legitimize wrongful conduct. So they need a full refund because otherwise it seems to me that a damages-only class is very tough because the amount of value somebody is getting is going to vary from plaintiff to plaintiff. So that's the big driver of the desire to have a full refund here? Your Honor, they actually, in their class certification papers, put forth two alternative methods, a full refund method and something less than a full refund method. So they understand that they actually sought themselves. It's like you have a not full refund class, even for damages, where common issues are predominant. Because somebody buys these things, figures out that, whoa, these things don't seem safe, and then throws them in the closet. But this grandma lets her kids play with these things a ton. So that would seem to vary from person to person. Your Honor, I'm not necessarily disagreeing with you. All I'm saying is that at this point we're not faced with that issue. So I'm not going to offer an opinion on that issue. Well, she did say that the purpose, the very purpose that she purchased for was for her granddaughter to play with. And had she known that the product was dangerous, she wouldn't have bought it at all. That's right. But, Your Honor, simply saying, well, had I known of the wrongful conduct, I wouldn't have bought the product, all that does is entitle you to standing to sue under the UCO. That does not entitle you to any specific amount of restitution. And that's a principle that's very clearly laid out in a number of California Supreme Court cases. So simply saying, well, I wouldn't have bought the product, therefore I'm entitled to a full refund, that's not the way that restitution under the UCO works. And it's important, Your Honor, in this world where someone is suggesting just making an assumption that illegal products are valueless. First of all, it's contrary to the facts. Courts are not supposed to be making assumptions that are contrary to the facts. And just to be clear, all we're talking about here is whether a plaintiff is entitled to a full refund. Okay? In determining what is an appropriate amount of restitution, the focus is on the plaintiff and on what is needed to make the plaintiff whole. Courts cannot decrease or increase the amount of restitution depending on their view of the egregiousness of the defendant's conduct or the type of conduct involved. What UCO restitution, what the California Court of Appeal has said in the in-rate tobacco 2 cases, is that UCO restitution may not be based solely on deterrence, no matter how egregious the defendant's conduct. And there's no punitive damages allowed in the UCO. So simply making a decision, we're going to deem this product valueless as a matter of law, even though the plaintiff received a benefit from it, and even though this would entitle them to a full refund, would just ignore settled rules of restitution under the UCO. Thank you, counsel. You're actually a little bit over time. And I know you wanted to save some time, so I'll put two minutes back on the clock for your vote. Thank you very much, Your Honor. Good morning, Your Honors. Good morning. Philip Kovnat on behalf of Ms. Jackson-Jones and the Certified Class of California Purchasers of the Calico Critter's Toys. I would like to begin with this issue of Article III standing. I think Judge Forrest and Judge Wynn are absolutely correct that there is no question here she has standing to seek restitution on behalf of the class and is therefore an adequate class representative under Rule 23A4. Judge Wright could easily, whatever this Court decides with regard to the injunctive relief and the Article III standing, the class can still be certified for restitution only. Now that's – You'd have to – we'd have to send it back for a do-over. And I don't know, depending on the stage of how far along you are, you might have to start all over again. I disagree, Your Honor. I mean, the district court certified a class of California purchasers. The district court said for all relief sought in the complaint. The order – maybe I didn't say it well. The current certification wouldn't stand, right? I disagree, Your Honor, respectfully, because the class is certified and the class is defined as the California purchasers from January 30, 2019 until the present. The remedy that's available to that class is not part of that class definition. I mean, if this Court decides – You have to have standing for every type of relief that you're seeking. So if you don't have standing for a particular type of relief, that relief can't stay in the case. But plaintiffs at any time could just abandon their request for injunctive relief. That's what I want to drill down to. Do you think that – like, because this case came up on removal from state court, what happens with – again, if we conclude that there is no standing for the injunctive relief claim or just injunctive relief, does that go back down to state court? Does that get dismissed? Can you split these claims based on remedy? Like, what happens? I think if this Court holds that Ms. Jackson-Jones does not have standing for injunctive relief, then send it back to the district court, and the parties can file papers in the district court to seek certification for restitution only. I mean, I don't think there's any need to send it to state court. It would just get removed back to federal court, so that would just be a waste of judicial resources. But – and it's not claim splitting. It's just dropping one of the forms of relief. That's what I'm getting at. So your clients – or your position would be that you would just make a choice in the district court to abandon the injunctive relief aspect of your claim so that you can proceed in federal court on the damages part. Correct. But I think that would be an unfortunate result because as the deaths of multiple children and severe injuries to other children demonstrate, the injunctive relief is a critical aspect of this case. Well, that may be true. And so if that is so critical, your clients also have the choice, again, if we conclude that there's no standing in federal court for that type of relief, to just go back to state court and then get all the relief that you can under the California statute. But I don't – the defendant would just remove it back to federal court under Rule 23F. I'm sorry, under – I mean, the class – the CAFA Class Action Fairness Act. So we would just end up back in federal court anyway. Well, I mean, there's a whole bunch of case law about whether you can split claims when we – when a federal court only has jurisdiction over some and not others. And, yes, that's a fight you'd have to have. But I think it's a choice you could make if the injunctive relief is really that important. I agree, Your Honor. And, I mean, I think it will obviously depend what this panel decides with respect to that. I would like to make the argument, though, that Ms. Jackson-Jones has standing for injunctive relief. If we look at her testimony, I mean, the defendants – I'll just start – the defendants focus very narrowly on this one portion of her deposition where she says, in response to a question from counsel, I take it you have no desire to purchase these toys. And she said not at this time. And Judge Forrest pointed that out. If you look at the broader context of her testimony, she said she loved the toys. She's obsessed with the toys. Her granddaughter continues to ask for the toys, including as Christmas gifts. She said she wanted to collect a whole little bunny world for her granddaughter. The defendants advertising – I agree with you. The problem with it, as I've searched all through the deposition transcript, is there's nothing – she doesn't go the next step of saying, now that I realize there's a problem, I still am interested in this future. She never says that. But the question is whether the district court drew a reasonable inference from the record. That's an abuse of discretion. For this court to overturn the district court's factual findings, they have to be illogical. You know the legal standards, so why didn't plaintiff's counsel just have her do another declaration and make this abundantly clear if that was true? Because this court has chastised parties for manufacturing testimony simply to get standing. Ms. Jackson-Jones was honest in her deposition. She said she loves the toys. She's obsessed with the toys. Her grandchildren want the toys. But she has safety concerns about them. And if she had known – I mean, if she knew – But I understand how submitting an additional declaration to clarify the point, if it was true that she really does want to buy these in the future – I don't know how that would be manufacturing evidence. Sure, Your Honor. And I recognize that point. I mean, I'm just saying that she was honest. The district court – No, I don't think that's really the issue. The issue really is right now, given the way that the record stands, you're asking us to draw an inference, and so then the question becomes whether that's too speculative, depriving her of adequate standing to represent the class for injunctive relief. She could have said, I love the toy, and if given the opportunity, I would definitely buy it again. That's what the record shows. In Davidson, we found that there was standing there. So it's not that she would be dishonest. It's just that you did not close that loop, and so the record is weakened because of that. I recognize that, Your Honor. And I'm not asking this court to draw an inference. I'm asking this court to see if the district court's inference was illogical, implausible, or without support in the record, which is a highly deferential standard of review. Judge Wright is a very experienced district judge. He sees class certification motions frequently. He certified this class. He didn't spell out in detail all the facts in the record that support the finding of standing for injunctive relief. Right. I mean, you said he made a factual finding, but I can't tell whether he thought through this issue and reached the question of I don't think it's too speculative because here's the inference that I'm drawing, and here's where the record supports that. He didn't do that. I recognize that, Your Honor. And to be fair to Judge Wright, there were a lot of issues in the class certification paper. Standing was one narrow issue. He did not go, you know, chapter and verse through all details in the record, but he did say that he credited Ms. Jackson-Jones' testimony that her granddaughter continued to ask for more toys, and he credited her testimony that her granddaughter loved the toys, and he drew the inference that she would be interested if she could tell when she goes into a store whether they are banned hazardous substances or not. And that's why it fits within the Davidson framework because, as Mr. Spire acknowledged, all of these toys have a label that say choking hazard or 3+. Some of them are actually banned hazardous substances. Some are not. Jackson-Jones still shops at Walmart. She still shops on Amazon. These are places where these toys are sold. She's interested in the toys. I mean, the fact that in her deposition, in response to a leading question from opposing counsel, she said not at this time does not vitiate all. I mean, the problem is you're saying she's interested in these toys, but we can't take your, you know, we have to take her word on it. I want to make sure before we run out of time on the damages issue. I'm really struggling with this idea that the restitution model, full restitution, makes sense here because, you know, kids played with this. The very named plaintiff, her grandkids played with these toys a ton. It doesn't appear like any of them got injured by the toys. It seems like if smoking cigarettes and you get terminal cancer, and, you know, I'm sure everybody gets terminal cancer probably is like, you know, I wish I hadn't done that, you know. But if smoking cigarettes can have value, which makes sense that there was some value associated with those, even though they can give you terminal cancer, then how can having these kids have played with these toys have no value at all? Economically, that can't be right. So it'd have to be some sort of like legal fiction that's imposed that when something has a defect, it has no value. But that doesn't make any sense to me either because, I mean, the type of things that have no value are things like a drug that's sold or a supplement that's sold that's supposed to do something. And it just doesn't do it. So the reason people are buying it is to do this thing, and it just does not do that. We just know it doesn't do it. But if instead like it does that thing, but it hurts you, a certain number of people, right? Like it actually does. It causes you to lose weight, but a certain number of people get sick from it or something. Then it would have value to a bunch of people because they lost weight. And that seems that these toys fall in that category. Kids play with them. They love them. Right, Your Honor. I think the key thing here is that under California law, under the steroid hormone products cases, something that is illegal to sell is by definition valueless or worthless, regardless of what the recipient of the product does. And the best example of that, it's interesting you mentioned cigarettes, is this In Ray Jewel case from the Northern District of California where it's a long opinion, but in one portion of it, the question was as to this youth class of purchasers who purchased e-cigarettes, and it was illegal to sell the e-cigarettes to those youth purchasers. And that's binding on us, and that's binding on, I mean, I guess it's a matter of life, but that's a state rule you're saying that says even though it's not true economically, your damages would be, we're going to say they're zero. Is that binding on us in figuring out what somebody's damages would be? Because it's not their actual real measure of damages. It's kind of a false measure. It's a penalty, basically. It would be being imposed on people. I mean, it's not a penalty. It's restitution. But under the Erie Doctrine, this court has to apply state law. But it's not actually restitution. If I sold you something that said it would make you a million dollars and it turned out that thing was illegal and it only made you $900,000, the restitution would be $100,000, right? And we could call it, we could say, no, as a matter of law, you have to give them back a million dollars. But let's not pretend that's restitution. So what I'm wondering is can we just ignore the reality of what it is and say, well, California says that that's the measure. Yeah. I mean, in the in-rate jewel case, there was no argument that the vaping products didn't work as expected. I'm sure the youth class derived benefit or pleasure from those e-cigarettes. But the court said they are inherently unlawful and therefore have no value. And I think the best case on this is an 11th Circuit decision. It's called Debernardis v. IQ Formulations. It was cited in the amicus brief at page 11. And there the court, it was conducting a standing analysis, but it was about a supplement that was illegal to sell, not illegal to buy. And the court said that it accepted the principle that when a federal agency has barred What supplement was that? I actually don't know. The case is Debernardis v. IQ Formulations. Let me just say a lot of supplements don't serve their purpose at all. Like there's no test at all. And that one I would say people are buying it to get huge and be a bodybuilder, and it just doesn't serve that at all. And it's just not like you're getting some use out of it. But that's different than where you're like selling an energy drink that also is supposed to turn you into Superman. And you don't know like half the people are buying it just because they like the taste of the energy drink and they want something to drink. So they're getting some benefit. You see what I'm saying? Like I'm not sure. But this is a bright line. It's not about whether the product performs as expected. It's a bright line rule that if a federal authority like the CPSC or in that case the FDA has barred the sale of a product, then it is inherently valueless regardless of what supposed benefits it may confer. And we can just take that legal proclamation, even though it doesn't fit with reality, and say that is how we will measure damage. Because it seems damages are supposed to reflect how you're actually injured. I agree, but there is a body of California law on this. It's not very well developed, but it is developed in the common law. In the Deborah and Artis case, they set a line of Florida cases. So there is this history in the common law that if a product has been banned by some authority. It's legally valueless. Legally valueless, exactly. I couldn't have said it better myself. Yeah, so then what that does is it's not really actually your damages. It's a penalty of sorts. It's basically saying if you sell a product, we will penalize you. And I'm just trying to think of maybe that's allowed, but I don't know. I have to think about it. Yeah, I disagree. It's a penalty. I mean the California Supreme Court has defined restitution as putting the consumer back in the place she would have been prior to the unlawful activity. This is an automatic.  Right, so going back to my example, you made $900,000. I now have to give you $1 million. You have $1.9 million. You spent $1 million. You have $900,000 more. And so that is not putting you back in the position. That is hitting me with a $900,000 penalty. I mean I think that to do otherwise would vindicate something that has been deemed unlawful. That is a concept. I mean it appears in the collateral source rule. There's various legal principles where a defendant might have to pay more than the plaintiff actually suffered. But that is because you, to the extent there's a windfall, and I disagree with the defendant's use of the term windfall here, but to the extent there's a windfall, that should go to the person who was, whose rights were violated versus the unlawful actor. I mean we do that, but it's a penalty. It's not, it's just not damages. Sure. Regardless of the characterization, I think, I mean restitution does, a full refund is sort of the classic example of restitution. In this case, there's Well, I mean it does make her whole, but the problem though is that there's evidence that the granddaughter did enjoy and used it and played with it. So I think that's what they're relying on is that there's some value because you did use it and you played with it. There's, there, remind me or, I want to make sure that I understand the record. When she saw her daughter putting the toy in her mouth, she put the toy away and didn't play with it after that? That's correct. But I would add she did buy another Calico Critter toys under, I'm sorry, a Calico Critter toy under the mistaken understanding that it was not a band hazardous substance, which goes to this informational injury where she goes into these stores, she can't tell the difference. So she did purchase another one, but yes, you're correct. When she saw her granddaughter putting the toy in her ear and her mouth, she hid them away and then gave them away, which also shows that at that point at least they were valueless to her. And I see my red light is on. All right. Let me see if my colleagues have any additional questions. All right. Thank you. Thank you, Your Honors. Thank you, Your Honors. I'll be brief. Judge Van Dyke, your response to my colleague's question on his point that all this does is make my client whole. So it clearly doesn't do that. But his other response is that as a legal matter, that's just what the rule is. So is he right about that? As a legal matter, if it's illegal, it's valueless. Or however my judge, Judge Van, said. She said it really well. Legally valueless. Yeah. There are two cases that they cite for that proposition. One is a California Court of Appeal case called in-race steroid hormone. That case does not involve any issue of restitution or entitlement to a full refund. It's just nowhere mentioned in the case. So that case is out. Okay. What about the other case? The other case is a district court case called in-rate Juul. Federal district court? That's a federal district court case. It's a non-binding district court decision. And the key distinction in Juul, which was about vaping products illegally sold to minors, was that in Juul, there was no finding. There was no evidence, nothing discussed in the opinion that any plaintiff. Well, I mean, you have me at federal district court. I mean, they do crazy stuff all the time. So this is not binding. It doesn't tell us what California law is. It does not tell you what California law is. And what Juul did was base its ruling on a case called Ortega. And in Ortega, the court held that a full refund was appropriate because the product was not only illegal. So I'll look at it. But, I mean, I don't want to take any more time. But, you know, it's not binding on us, so it's only if it's correct. Could be persuasive. Yeah. Could be persuasive. I do not agree. But just one point on the injunctive relief and lack of standing for it. The second reason that injunctive relief is not available to the plaintiff here is because the plaintiff has made it abundantly clear, through her own admissions, that, quote, she does not intend to purchase calico critters while they are still hazardous substances and, quote, is unwilling to buy illegal choking hazards. Well, she's just talked herself right out of any ability to obtain injunctive relief because if she is not going to buy an illegal product, there is no possible threat of injury because what she's saying is I'm not going to buy an illegal product. And that was her claimed injury. All right. Thank you very much, counsel. We appreciate your arguments from both sides of the matter submitted.
judges: NGUYEN, FORREST, VANDYKE